**GRANT et al. v. ROSE, Collector of Internal Revenue.**

District Court, N. D. Georgia. January 30, 1928.

Nos. 912, 913.

1. **Internal revenue ⟨⟩7(8)—Bequest expressly as payment for services as executor and trustee held taxable as "income"; "property acquired by gift, bequest, devise, or descent" (Revenue Act 1918, § 213 [Comp. St. § 6336⅛ff]).**

Where a will contained this provision: "For his compensation as executor and trustee under this will I give and bequeath to my son * * * the sum of twenty-five thousand dollars, which shall be in full for all services as executor and trustee for his minor children," the amount so received by the son was payment for personal services, and taxable as "income," and not exempt as "property acquired by gift, bequest, devise or descent," under Revenue Act 1918, § 213 (Comp. St. § 6336⅛ff).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue ⟨⟩7(22)—Life tenant of office building held entitled to allowance for depreciation (section 214, subd. 8, Revenue Acts 1918 and 1921 [Comp. St. § 6336⅛g]).**

Life tenant of an office building *held* entitled to an equitable apportionment between himself and the remaindermen of the allowance for depreciation deductible under section 214, subd. 8 of the Revenue Acts of 1918 and 1921 (Comp. St. § 6336⅛g).

3. **Internal revenue ⟨⟩7(22)—Life tenant held entitled to allowance for depreciation of capital improvements made by him (section 214, subd. 8, Revenue Acts 1918 and 1921 [Comp. St. § 6336⅛g]).**

Allowance for depreciation to life tenant of office building, deductible under section 214, subd. 8, of the Revenue Acts of 1918 and 1921 (Comp. St. § 6336⅛g), also applies to capital improvements made to the property by the life tenant, which by the law of the state become a part of the property, and pass to the remainderman on falling in of the life estate.

4. **Internal revenue ⟨⟩25—Right of choice of husband and wife between making separate or joint return terminates on expiration of time for filing return (Revenue Act 1921, § 223 [Comp. St. § 6336⅛kk]).**

Under Revenue Act 1921, § 223 (Comp. St. § 6336⅛kk), permitting husband and wife, at

their election to make joint or separate returns, the right of choice terminates on expiration of the time for filing returns.

**5. Internal revenue ⊜⇒38(9)—Parties on Joint return may properly join in action to recover overassessment of taxes.**

Where taxes are overassessed on a joint return, the parties thereto may properly join in an action for their recovery.

At Law. Action by John W. Grant and by John W. Grant and Annie I. Grant against J. T. Rose, Collector of Internal Revenue. On demurrers by defendant. Sustained in part, and overruled in part.

Slaton & Hopkins, of Atlanta, Ga., and Richard H. Wilmer, of Washington, D. C., for plaintiffs.

C. P. Goree, Asst. U. S. Atty., of Atlanta, Ga., and O. R. McGuire, Sp. Asst. Atty. Gen., for defendant.

SIBLEY, District Judge. J. T. Rose, as Collector of Internal Revenue, demurs to two suits against him for recovery of income taxes, one brought by John W. Grant for taxes exacted for the years 1920, 1921, and 1922, and one brought by John W. Grant and his wife, Mrs. Annie I. Grant, for taxes exacted on a joint return for the year 1923. The cases arise out of similar facts, and will be dealt with in one opinion.

The decisive questions are: (1) Is $25,000 received in 1920 by John W. Grant under the will of his mother taxable as income? (2) Is he entitled to an allowance each year for depreciation of an office building in Atlanta, he being tenant for his life only? (3) Is a life tenant entitled to depreciation on elevators placed in the building during the life estate? (4) Had a husband and wife who, in 1923, made a joint return, a right to substitute separate returns after taxes had been assessed on the former? (5) Is Mrs. Grant a proper party to the suit in which she joins?

[1] 1. In September, 1920, the mother of John W. Grant left a will, the ninth item in which is: "For his compensation as executor and trustee under this will, I give and bequeath to my son, John William Grant the sum of twenty-five thousand dollars, which shall be in full for all services as executor and trustee for his minor children." This sum was returned by him as income for taxes, but by amendment claimed to be exempt. The tax paid under protest in respect of it is now sought to be recovered. The important portions of the governing Act of February 24, 1919, are: "Section 213. * * * The term 'gross income' * * * includes gains, * * * derived from * * * compensation for

personal service * * * of whatever kind and in whatever form paid. * * * Does not include the following items, which shall be exempt * * * under this title: * * * The value of property acquired by gift, bequest, devise, or descent. * * *" Comp. St. § 6336⅛ff.

The naked question is whether this $25,000 is compensation for personal services as an executor and trustee paid through a will, or is the value of property acquired by a bequest. I do not regard the case of United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547, as settling this question. The court did not therein hold that all personal property received through a will was a bequest and untaxable, but at page 185 (44 S. Ct. 69) refused so to hold, and on page 187 (44 S. Ct. 71) said: "The distinction to be *drawn* is between *compensation fixed by will* for services to be rendered by the executor and a legacy to one *upon the implied condition* that he shall clothe himself with the character of executor. In the former case he *must perform* the service to earn the compensation. In the latter case he need do no more than in good faith *comply with the condition* in order to receive the bequest." The case was so interpreted and applied in Ream v. Bowers (C. C. A.) 22 F. (2d) 465, where the compensation fixed for executors by a will was held taxable. In the Merriam Case the will made, in one item, complete bequests of money to several persons not there referred to as executors. In a later item some of these were named executors, and it was declared: "The bequests herein made to my executors are in lieu of compensation or commissions to which they would otherwise be entitled as executors or trustees." The bequests first made were still called "bequests," and an express condition was added that the legatees should not in addition claim commissions, and the court held that there was also an implied condition that they should qualify in good faith as executors and trustees. In the Ream Case, after appointing executors and trustees, the will, without words of gift or bequest, directed that the executors "shall each *be paid* and shall each receive in *full payment* * * * for acting as executors" fixed amounts.

In the present will there are the usual words of bequest, "I give and bequeath." The item in controversy immediately follows other money bequests, and precedes the residuary dispositions, and deals with a son who is within the range of the testamentary benevolences. On the other hand, the item omits words of absoluteness used in previous bequests, and begins with the words *"for* his

compensation as executor and trustee under this will," and ends with the words "which shall be *in full for* all services as executor and as trustee for his minor children." The plain meaning is that the money "given and bequeathed" is in consideration of the expected services. It cannot properly be received unless the services for which it is specifically offered are rendered. The figure, $25,000, approximates the amount that would be allowable under the laws of Georgia as commission on cash handled and compensation for the legacies delivered in kind in the execution of the will and of the trusts for his children. If the "bequest" had been to a stranger instead of to a son, the conclusion would be unescapable that compensation for services rendered rather than testamentary beneficence was intended. I do not think this single circumstance of kinship should alter the plain meaning of the words used. The allegations touching parole statements of the testatrix as to her intentions cannot alter it. Such evidence of intention is inadmissible. The argument about the balance maintained in the will between son and daughter is not impressive. Jewels and heirlooms of a mother would naturally be given to the daughter, and are fairly balanced by a sole executorship given to the son for a fixed compensation of $25,000. Mr. Grant's first impression that this sum was taxable income is correct, and his present claim to the contrary should be disallowed.

[2] 2. Prior to 1913 John W. Grant became invested, under his father's will, with an estate for life in a valuable office building in Atlanta, to follow a precedent estate in his mother for her life, and to be followed by a remainder in fee to others. All are legal estates without any trusts so far as appears. By his mother's death in September, 1920, he came into possession, having then a life expectancy of 19 years, the building being about 20 years old. He has since returned the income from the building for taxation, and claimed an annual allowance for obsolescence or depreciation, which has been disallowed from 1920 through 1923. The Tax Acts of February 24, 1919, and November 23, 1921, § 214(8); Comp. St. § 6336⅛g, allow deduction of "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

In Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, exhaustion and depletion of a mine was held deductible by the lessee for a term of years. As against the contention that the owner of the fee was the person entitled to the deduction, it was held that the interest of both were affected, and that the deduction should be allocated in proportion to the interest of each severally considered. It is here contended that the depletion of a mine differs from the exhaustion of other property, and that a lessee has a different kind of interest from a life tenant, so that the decision is not controlling here. But the ruling was made on broad reasons of statutory construction. On page 370 (45 S. Ct. 276) it is expressly said: "The deduction for depletion * * * of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property." The case is authority for apportioning the deductions allowed on business property under the tax acts quoted between owners of successive interests therein. A legal life estate is not only an interest but a freehold estate. It has a market value ascertainable in various ways. 21 C. J. 943. It may be separately injured and compensated for.

Where, as here, an office building is involved, its desirability for rent, even though it be kept in ordinary repair, will decrease from year to year. It will become obsolete long before it falls to decay. The life tenant's interest in it thus becomes lessened by the depreciation of his building from age in addition to the lessening that happens to every limited estate in any sort of property by the mere running out of its time. Evidently the building depreciates and is exhausted equally whether it is owned in fee or by life estate and remainderman. The only question is how and to whom the deduction therefor shall be allowed. That question is answered by the Lynch Case—it is to be fairly apportioned. Congress, in considering the matter in enacting the Tax Act of 1926 (44 Stat. 26), made the same answer (section 214[a]): "In the case of improved real estate held by one person for life with remainder to another person, the deduction provided for in this paragraph shall be equitably apportioned between the life tenant and the remainderman under rules and regulations prescribed by the commissioner with the approval of the Secretary." 26 USCA § 955. The provision of section 215(b) of the Act of 1921 (Comp. St. § 6336⅛gg) does not control to the contrary for the years covered by it. It prohibits deduction from an income of a life or terminable interest for the loss of value "due to the lapse of time." As has been pointed out above, every such interest in any kind of property becomes less valuable due to the *mere* lapse of time, though the

property itself in which the interest exists be not subject to exhaustion or deterioration. Deduction on this account is prohibited. The deduction we are considering is not that arising from mere lapse of time which exhausts the *estate,* but that arising from the deterioration or obsolescence of the particular kind of *property involved,* which exhausts the *property.* Also beside the mark are cases like Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428, which refuse deductions for capital losses to the beneficiary of a fixed income from a trust, because the trustee, who owns the entire fee, is the taxpayer who suffers the loss and is entitled to the deduction.

But it is unnecessary to the ruling of these demurrers to now fix the exact basis of apportionment between life tenant and remainderman. Light on what has always been equitable may, on the trial, be got from the regulations adopted under the Act of 1926 and from experience with them.

[3] 3. The life tenant in Georgia is bound to keep the premises in repair, and is liable for waste, active or permissive. Roby v. Newton, 121 Ga. 684, 49 S. E. 694, 68 L. R. A. 601. These duties and liabilities, however, do not bind him to replace property that perishes without his fault, or to improve it, nor to keep it abreast of the time. 21 C. J. 953. If he does this without agreement with the remainderman, his representative is held to be entitled to no compensation on the falling in of the life estate. He loses the improvements. Dean v. Feely, 69 Ga. 805; Austell v. Swan, 74 Ga. 278. The elevators in dispute appear not to have been treated as repairs to the building deductible when made, but as an improvement, a capital investment. They are fixtures—a part of the building. Whether they were added by the life tenant, Mrs. Grant, or her succeeding life tenant, John W. Grant, the result is the same as concerns the remainderman. They belong to the present life tenant for his life, to use and to use up, or finally to lose. As to them I think he is clearly entitled either to a reasonable annual allowance for exhaustion, based upon the life of the particular property, and, if the aggregate deductions so allowed do not balance the capital investment by his death, his estate should then have further credit for the difference as a business loss then accruing; or else to a deduction arrived at on the basis of the life expectancy of the life tenant, if that is less than the life of the property, along the lines followed in Duffy v. Central R. Co. of New Jersey, 268 U. S. 55, 45 S. Ct. 429, 69 L. Ed. 846. Either would be a reasonable allowance.

[4] 4. The joint return of Mr. and Mrs. Grant was made under section 223 of the Act of 1921 (Comp. St. § 6336⅛kk), providing: "If a husband and wife living together have an aggregate net income for the taxable year of two thousand dollars or over * * * (1) each shall make such a return, or (2) the income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income." Husband and wife living together frequently do not keep their affairs separate, and probably for this reason they are allowed to make returns as quasi partners. This may result on the one hand in disadvantage to them in increasing the rates of normal tax and surtaxes, or advantage in absorbing in the joint income losses which would exceed the separate income of the loser. There is nothing in the law to prohibit the choice of joint or separate returns according to the result on the taxes to be paid, although husband and wife actually have kept their affairs entirely separate. On the other hand, there is nothing in the act to extend the right of choice beyond the time for making the returns. It is not unreasonable to claim a right to substitute one form of return for the other up to the last day for making returns, but, after that, and especially after the returns have been reviewed and assessments made, there are strong administrative reasons for not permitting the upsetting of the whole basis of calculation. The statutes make no provision for amendment of returns, but, in order to correct mistakes and prevent inequities and injustices, they ought manifestly to be, and are, freely allowed. Prior to 1922 it was the practice under the guise of amendment to substitute a joint return of husband and wife for separate ones and vice versa, not because of any necessity or mistake, but because it turned out that something might be saved to the taxpayers by so doing. This practice was discontinued by the department, after public notice, long prior to the filing of the joint return in this case. I hold that the statutory right of choice is exhausted on expiration of the time for filing returns. There is no right, and it seems to me no propriety, in allowing any change later to the disadvantage of other classes of taxpayers. The contrary practice which was established by the department could be abolished by it. The expectation on the part of Mr. Grant that he would be allowed fire losses more than equal to his separate income which induced him to include them in a joint return is not such a mistake of fact when disappointed as calls loudly for relief.

Of a different nature is the choice offered the taxpayer in section 206(b) of the Act of 1921 (Comp. St. § 6336⅛ddd) as to taxing capital net gains. The provision there is that there shall, "at the election of the taxpayer be levied, *collected and paid*" alternative taxes. This choice is appropriately exercised at the time of collection and payment rather than at the time of the return, but, after voluntary payment, I should say there was no right to make another choice.

[5] 5. Upon the joint return, a joint tax was assessed. Both defendants in the assessment properly join in a suit for the recovery of taxes overassessed. The collector is not concerned with what they do with the recovery as between themselves.

Orders may be taken upon the demurrers in accordance with this opinion.