PACIFIC COAST BISCUIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMERICAN BISCUIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CAPITAL CANDY AND CRACKER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EVERYBODY'S MACARONI COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TACOMA BISCUIT AND CANDY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71588, 74625–74628.  Promulgated February 14, 1935.

*Percy W. Phillips, Esq.*, for the petitioners.
*J. R. Johnston, Esq.*, for the respondent.

## OPINION.

ARUNDELL: The amounts expended in 1926 in connection with the retirement of capital stock and the issuance of new stock, and the expenditures in 1930 in connection with petitioner's dissolution and liquidation, are claimed by petitioner to be deductible as losses in the year 1930. This claim is based on the holding in *Malta Temple Association*, 16 B. T. A. 409.

In the *Malta* case we found as a fact that in connection with the taxpayer's incorporation it incurred certain expenses which, under our holdings in cases cited, constituted capital expenditures. The amount of those expenses we allowed as a loss deduction in the year in which the taxpayer dissolved and surrendered its charter. We said in part:

Upon dissolution and surrender of its corporate franchise in the year 1925 the petitioner abandoned or lost a corporate asset which had cost it $1,087.40, no part of which had been returned to it through exhaustion deductions or as ordinary and necessary expense deductions. We think that such a loss clearly falls within the provisions of section 234(a)(4) of the Revenue Act of 1924, and is deductible in computing net income of the year when sustained.

Petitioner's expenditure of $745 in 1926 for amendment of its articles of incorporation was a capital expenditure similar to that in the *Malta* case, and under our holding in that case it is an allowable deduction in 1930, the year of dissolution.

The other expenditures in 1926 in connection with the retirement of stock and the issue of new stock were of a different character. One of the expenditures was a banker's fee in connection with the retirement of old stock and sale of new stock and the other was a

capital stock transfer fee paid to the State of New Jersey. They were not organization expenses and did not result in the acquisition of a capital asset. These expenditures are like those in *James I. Van Keuren*, 28 B. T. A. 480, where a corporation, subsequent to the completion of its organization, incurred expenses in selling its capital stock and sought a deduction therefor in the year of dissolution. We sustained the respondent's disallowance of the claim, and in the opinion said:

The petitioner relies upon our decision in the case of *Malta Temple Assn.*, 16 B. T. A. 409. That case, however, related to a loss sustained by a corporation upon dissolution and surrender of its charter, not in connection with expenditures incurred in selling stock, but expenditures in connection with incorporation. The petitioner here is not claiming a loss for what it cost to incorporate, but what it cost to acquire capital, a different matter. It may fairly be said that money expended to form a corporation results in the acquisition of an asset, namely the corporate franchise, which may be considered as a balancing asset, but money paid out to acquire capital does not result in the acquisition of any asset other than the capital itself.

In *Barbour Coal Co.* v. *Commissioner*, 74 Fed. (2d) 163, the court said that a commission paid for the sale of capital stock does not result in the acquisition of property used in the trade or business, but is an expenditure " for captial in the forms of cash for use in the business. * * * It is equivalent for income tax purposes to the sale of stock at a discount." Under the holding of the above cases petitioner acquired no asset by the payment of the banker's fee and the capital stock transfer fee; consequently, there was no asset value for it to lose when it dissolved in 1930. We sustain the respondent's disallowance of these items.

The question as to the deduction of the expenditures in 1930 in connection with petitioner's dissolution and liquidation does not appear to have been passed upon in any of the decided cases. It is argued by petitioner that this deduction is governed by the decision in the *Malta* case, *supra*, and it is further claimed that the expenditures are ordinary and necessary expenses. Clearly the cost of dissolution and liquidation did not constitute a deductible loss. Those expenditures did not represent the cost of any asset which was lost upon dissolution and liquidation. If, as held in the *Malta* case, a loss is sustained upon surrender of the corporate franchise, the measure is the cost of acquisition and not the cost of disposition. The expenses allowable by the statute are those relating to a trade or business that are both ordinary and necessary. It will not be doubted that expenditures in connection with liquidation and dissolution are necessary. When business is conducted in corporate form, the governmental authority that endows the artificial corporate being with life also prescribes how that life may be terminated and requires

compliance with certain formalities. Such compliance necessitates expenditures, one of which quite commonly is that of a fee for filing a certificate of dissolution. Services of attorneys and accountants may be required. If the corporation has acquired any property, liquidation is necessary and this may require the expenditure of considerable sums. In *Welch* v. *Helvering*, 290 U. S. 111, consideration was given to the meaning of the word " ordinary " in the provision of the statute allowing deduction of ordinary and necessary expenses. First, stated negatively, it " does not mean that the payments made be habitual or normal in the sense that the same taxpayer will have to make them often." Second, it does include such items as the cost of a lawsuit affecting the safety of a business, " because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. * * * The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part." Dissolution and liquidation will of course occur but once in the case of any particular corporation, but it is an everyday happening in the business world, and in this sense it is quite an ordinary affair under the test of the *Welch* case. Consequently we are of the opinion that costs of dissolution and liquidation are both ordinary and necessary expenses within the meaning of the statute. We are further of the opinion that costs of dissolution and liquidation are so closely connected with a taxpayer's business as to come within the rule of *Kornhauser* v. *United States*, 276 U. S. 145, which allows the expense of defending a suit for an accounting by the taxpayer's former partner on the ground that such a suit is a matter " directly connected with, or, as otherwise stated (*Appeal of Backer*, 1 B. T. A. 214, 216), proximately resulted from " the taxpayer's business. Here, while no suit is involved, the liquidation and dissolution are in the nature of a final accounting of the results of the taxpayer's business rendered to its stockholders and the state. We conclude on this point that the petitioner is entitled to deduct the expenses aggregating $12,856.77 which it is stipulated were incurred " in connection with its dissolution and liquidation."

As to the interest item, petitioner contends that the portion thereof allocable to 1929 on a time basis was an accruable item for 1929 and does not belong in 1930 income. In *Household Products, Inc.*, 24 B. T. A. 594, we held that under the Revenue Act of 1926 interest on refunds accrued at the time the Commissioner signed the schedule of overassessments pursuant to which the refunds were made. That was by reason of the provisions of the Revenue Act of 1926, which, in substance, provided for the allowance of interest from the

date of payment to the date on which the schedule of overassessments was signed. Sec. 1116, Revenue Act of 1926. By section 614(c) of the Revenue Act of 1928, section 1116 of the Revenue Act of 1926 was specifically repealed. In lieu thereof it was provided in section 614(a) that:

(a) Interest shall be allowed and paid upon any overpayment in respect of any internal-revenue tax, at the rate of 6 per centum per annum as follows:

\* \* \* \* \* \* \*

(2) In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than 30 days, such date to be determined by the Commissioner.

The effect of this provision, as we read it, was merely to change the termination of the period for which interest was allowable. Under the prior statute the date of signing the schedule of overassessment marked the end of the interest period; under the 1928 Act the end of the period was not determined by the date of the schedule of overassessment, but ended some time within 30 days prior to the date of the refund check. This change in the statute did not in any way affect the taxpayer's right to interest on an overpayment. The statute still allowed interest and when the Commissioner certified on his schedule of overassessments that this petitioner was entitled to a refund the right to interest thereon became sufficiently fixed to warrant its accrual.

Respondent's objection to allowing the accrual of interest in 1929 is that it was not reported as income for that year. There is no evidence on this point, but even assuming that it was not reported for 1929, that fact standing alone would not work an estoppel against the taxpayer and require the inclusion in 1930 income.

Petitioner concedes that that portion of the interest which accrued in 1930 was income in that year, but contends that it is entitled to a credit of an equal amount against net income under section 26(a) of the Revenue Act of 1928. That section provides for the allowance of a credit of " The amount of interest received upon obligations of the United States which is included in gross income under section 22." The latter section, 22, provides for the inclusion in gross income of " Interest upon \* \* \* the obligations of the United States \* \* \*." Under the Revenue Act of 1926, which provided for exemption of interest on obligations of the United States, it has been held that interest on a refund of overpaid taxes is not included within the statutory description of exempt income. *American Viscose Corporation*, 19 B. T. A. 937; affd., 56 Fed. (2d) 1033. The language of the statute here is the same except that it provides for a credit rather than an exemption, and the same reasoning applies. The argument that the interest became a definite " obligation " with-

in the meaning of the credit provision when the refund was scheduled is without merit. The premise of the *Viscose* case is that the statute intended to free from tax the interest on bonds and securities of the Government only in order to make them more attractive to investors. The view of the Court of Appeals in the *Viscose* case is sustained by the Supreme Court in *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84.

We accordingly hold that the interest allocable to 1929 should not be included in 1930 income, and that petitioner is not entitled to a credit in the amount of the interest for 1930.

Finally, petitioners question the propriety of the respondent's action in asserting a deficiency against each of them. The deficiency, it appears from the pleadings, arises from adjustments of income of the parent, Pacific Coast Biscuit Co. This action is in accordance with article 15 of Regulations 75, which provides that the parent and each subsidiary " shall be severally liable for the tax (including any deficiency in respect thereof) computed upon the consolidated net income of the group." The subsidiaries each executed and filed a Form 1122 in which they unqualifiedly consented to the regulations. This was a voluntary act on their part and they will not be heard now to complain of the consequences. Furthermore, it is hardly to be presumed that the respondent will attempt to collect the deficiency from each of the petitioners. As they say, there is but one deficiency, and if it is attempted to collect more than that an appropriate remedy is doubtless available to petitioners.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting: The opinion holds that $745 expended by the corporation in 1926 for amendment of its articles of incorporation is an allowable deduction in 1930. Without discussion, the decision is merely predicated upon the prior decision in the *Malta* case, a Division decision not reviewed by the Board. This is the first instance where the Board has reviewed the question whether an organization outlay, or something said to be analogous thereto, is within the statutory provision for the deduction of losses sustained during the taxable year and not compensated for by insurance or otherwise, Revenue Act of 1924, section 234 (a) (4) ; Revenue Act of 1928, section 23 (f).

I am unable to find that a loss has been sustained. It has been held, beyond the reach of further inquiry, that at the time of the outlay there is no deduction either by way of current business expense or by way of loss, and it has also been held that such an outlay is not such a capital investment as to become the basis for annual exhaustion.

These two denials can form no basis for granting the allowance at some other time or under other circumstances, unless such deduction is provided for by the statute. The deduction is not to be granted merely because the taxpayer is compelled by an accounting convention to charge off the item and thus clear it from its books, nor is the deduction to be granted merely because the tax return of the taxpayer has never been permitted by the statute to reflect the outlay. It has been held often enough that deductions depend upon the statute.

Aside from the accounting, I can see no substance in the idea that a corporation suffers a loss of the cost of its corporate existence when it dissolves. Its organization costs are incurred because it desires to exist. It gets what it desires for as long as it wishes and then voluntarily quits. Thereby it loses nothing. To the contrary, it has enjoyed everything which the expenditure contemplated. Just as it has been said that the corporation acquired nothing exhaustible by the expenditure, so it must be said that it loses nothing at the end.

It is a far greater strain of reasoning to call the amount a loss at the time of dissolution, which perchance may be many years after the expenditure has been actually written off and forgotten, than it would have been to call it either an expense or an exhaustible investment at the beginning of the corporation's life. It is merely another instance of a nondescript accounting item the substance of which is not within the enumerated statutory factors of net income.

McMahon agrees with this dissent.

————

Murdock, dissenting: The prevailing opinion holds that a fee paid in connection with the amendment of a corporate charter may be deducted as a "loss" upon dissolution of the corporation; amounts expended in connection with the dissolution and liquidation of the corporation are deductible in the year of dissolution as "ordinary and necessary expenses"; but that fees paid in connection with the retirement of capital stock and the issue and sale of new stock can not be deducted as a "loss" upon dissolution. I am unable to distinguish between the two kinds of fees so as to hold that one is deductible and the other not. I do not agree that the amounts expended in connection with the dissolution and liquidation of the corporation are deductible under section 23 (a). I am unable to find any statutory authority allowing a deduction for any of these expenditures.

Sternhagen and McMahon agree with this dissent.