## COLE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7477.

Circuit Court of Appeals, Ninth Circuit.

Dec. 20, 1935.

WILBUR, Circuit Judge, dissenting.

———◆———

Bouchard & Brady, of Los Angeles, Cal. (Joseph D. Brady, of Los Angeles, Cal., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, F. A. LeSourd, and F. W. Dewart, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

On or about March 15, 1930, there was filed with the collector of internal revenue at Los Angeles, on form 1040 of the Treasury Department Internal Revenue Service, a joint return of the income of Louis M. Cole and Frida Hellman Cole, his wife, for the calendar year 1929.

The joint return showed a net income of $60,776.61, and a total tax liability of $4,984.64. The respondent has determined a deficiency in income tax for the year 1929 in the amount of $74,059.17, which he now stipulates should be reduced to $27,568.59.

The petitioner pleads that the income in question belonged to the wife of the decedent, and "that whatever deficiency may exist with reference to the joint return filed for 1929 by decedent and his wife is wholly attributable to the income of said wife and is not to any extent attributable to the income of said decedent."

Only the liability of the estate of Louis M. Cole, the husband is involved in the present controversy.

A segregation of the amount of net income which the Commissioner has redetermined as a basis for his present claim for a deficiency of $27,568.59, between the income of the petitioner's decedent and the income of Frida Hellman Cole, will show a total net income for the petitioner's decedent of $9,614.47, of which $4,279.88 is income from dividends not subject to normal tax; and separate income of Frida Hellman Cole in the amount of $253,479.41, of which $238,855.76 is subject to tax at the capital gain rate of 12½ per cent., and $14,-623.65 is subject to normal tax.

The Board of Tax Appeals filed an opinion sustaining the respondent's position, and promulgated a decision redetermining a deficiency of $27,568.59. 29 B.T. A. 602. That decision is the subject of the present petition for review.

The applicable statutes and regulations are as follows:

Revenue Act of 1928:

"§ 11. *Normal Tax on Individuals.*

"There shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax equal to the sum of the following: * * *

"Sec. 12. *Surtax on Individuals.*

"(a) *Rates of surtax.* There shall be levied, collected, and paid for each taxable year upon the net income of every individual a surtax as follows: * * *

"Sec. 51. *Individual Returns.*

"(b) *Husband and wife.* If a husband and wife living together have an aggregate net income for the taxable year of $3,500 or over, or an aggregate gross income for such year of $5,000 or over—

"(1) Each shall make such a return, or

"(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income." (45 Stat. 795, 796, 807, 26 U.S.C.A. §§ 11, 12 notes and § 51 (b) (1, 2) and note)

Treasury Regulations 74 under the Revenue Act of 1928:

"Art. 381. *Individual returns.*— * * * Where the income of each [husband and wife] is included in a single joint return, the tax is computed on the aggregate in-

come, and all deductions and credits to which either is entitled shall be taken from such aggregate income."

The petitioner contends that where husband and wife file a joint return, each is liable only for the proportion of the tax attributable to his share of the aggregate income; and that, since Louis M. Cole's proportion of the total tax liability assessable with respect to the joint return was only $1,189.50, and since the deficiency notice gives him credit for $4,984.64, the board erred in failing to hold that no part of the corrected deficiency of $27,568.59 was now assessable against his estate. In other words, the petitioner argues that inasmuch as the income in question was received by the wife, liability for the tax thereon cannot be asserted against the husband.

The respondent, on the other hand, asserts that "The husband and wife each being in part responsible for the joint tax, and it being impossible for the Commissioner to prorate it, it is necessary and proper that the husband and wife be held jointly and severally liable for the entire tax." The Commissioner says in his brief: "The tax as computed is not the combined individual taxes of the two, and if the husband pays it he is not paying the individual tax of his wife as well as his own. He is paying a tax on the combined income computed as a separate entity and a tax which, it must be assumed, is less than would be the aggregate of the individual taxes."

In Gummey v. Commissioner, 26 B.T.A. 894, 895, 896, the Commissioner advanced the theory that, having elected to file a joint return, for the purpose of applying the provisions of section 118 of the Revenue Act of 1928, 26 U.S.C.A. § 118 note, the husband and wife became "a single taxing entity, and as such, 'the taxpayer.'" Of such a contention, the board said:

"We do not so interpret the statute.

"Where husband and wife exercise the statutory right to file a single joint return, 'the tax shall be computed on the aggregate income.' Sec. 51(b), 1928 Act [26 U.S. C.A. § 51 and note]. The statute provides for the allowance of losses sustained by individuals. Sec. 23 (e) [26 U.S.C.A. § 23 note]. Section 118 of the same statute [26 U.S.C.A. § 118 note] provides against the allowance of stock losses 'where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired * * * substan-

tially identical property.' The term 'taxpayer' means any person subject to a tax imposed by the act, and the term 'person' includes an individual. Sec. 701(a) (13) and (a) (1) [26 U.S.C.A. § 1696 (a) (14) (1)].

"There is nothing in section 118 of the 1928 Act to the effect that the transactions of husband and wife who file a single joint return should be regarded as the dealings of the reporting spouse in the application of its provisions. Where a husband and wife exercise the statutory right to file a single joint return gross income and deductions are listed as though they belonged to the one making the return, but in reality they represent the combined receipts and deductions of each. To reach the aggregate net income, on which the tax is computed, consideration must be given to the transactions of each. In no other way can the combined taxable income be determined. The respondent has recognized this condition by the promulgation of regulations under section 51 of the 1928 Act providing that where husband and wife file a single joint return 'all deductions to which either is entitled shall be taken from such aggregate income.' A like regulation was in force under prior acts containing provisions similar to section 118 of the 1928 Act. Art. 401, Regulations 62, 65, and 69.

"If the theory being advanced by the respondent here were carried out to its logical conclusion, a loss sustained by a husband or wife in a transaction between them would not be deductible under the statute on the ground that a person can not enter into a transaction with himself. A loss sustained by the husband in a transaction with his wife has been allowed as a deduction from gross income reported in their single joint return. Fleitmann et al. v. Commissioner, 22 B.T.A. 1291. The acquiescence of the respondent in the decision is shown in C. B. X-2, 214.

"Had the petitioner and his wife filed separate returns, there would be no question about the deductibility of the losses sustained by each. *In filing a single joint return they lost none of such rights; each remained an individual, and as such, a taxpayer, within the meaning of section 118 of the statute.*" (Italics our own.)

See, also, Uihlein v. Commissioner, 30 B.T.A. 399, 401, 402, and Van Vleck v. Commissioner, 31 B.T.A. 433, decided on October 25, 1934.

Although as recently as the Uihlein Case, supra, which was decided on April 17, 1934, the Commissioner was contending that "where a husband and wife living together file a single joint return of income, such husband and wife become a single taxing unit," the Bureau of Internal Revenue apparently adopted a different view when compiling its Regulations 86, under the Revenue Act of 1934; for, in article 117-5 of that compilation we find the following: "In the application of section 117 [dealing with capital gains and losses], a husband and wife, regardless of whether a joint return or separate returns are made, are considered to be separate taxpayers."

In his brief, the respondent Commissioner earnestly argues that "the husband and wife, must of course, accept this unusual privilege of reducing their taxes as it exists with all of its necessary concomitant conditions and results." That the "unusual privilege" referred to, however, does not require the surrender of the spouses' individuality as separate taxpayers, is clearly indicated by the Board of Tax Appeals in the case of Fawsett v. Commissioner, 31 B.T.A. 139, decided on September 5, 1934:

"But respondent contends that by reason of electing to report their income for 1929 in a joint return, a privilege which the statute grants to married persons, petitioner and his wife must, for all purposes of the revenue act, be treated as one. In Frank B. Gummey v. Commissioner, 26 B.T.A. 894 [supra], we held against the respondent's contention. While there may be some logic in his view, we find no authority for it in the revenue acts, and it is a cardinal rule of construction of taxing statutes that there can be no tax imposed by implication or construction, and in case of doubt or ambiguity, either as to the fact of the imposition or as to the amount thereof, it must be resolved in favor of the taxpayer. Gould v. Gould, 245 U.S. 151 [38 S.Ct. 53, 62 L.Ed. 211]; Crooks v. Harrelson, 282 U.S. 55 [51 S.Ct. 49, 75 L.Ed. 156].

"Sections 11 and 12 of the Revenue Act of 1928 [26 U.S.C.A. §§ 11, 12 notes], the imposing provisions of the statute, impose a tax upon the taxable income of each individual. Each is defined as a taxpayer and the fact that the Congress, having regard to the marital status and in order to eliminate a large number of returns, sees fit to permit the inclusion in the one return of the income of husband and wife, does not serve to deny to these individual taxpayers the other benefits of the taxing statutes. * * * Hoeper v. Tax Commission of Wisconsin, 284 U.S. 206 [52 S.Ct. 120, 76 L.Ed. 248], would seem to be authority for the proposition that Congress could not forcibly require a husband and wife to jointly return their income, and while the Federal taxing acts have never pretended to do so, but have only permitted married people to file joint returns, we feel that *this privilege is not bought by the sacrifice of their other rights under the statutes. * * * The acceptance of the privilege of filing a joint return by a married couple carries with it no denial of their individual rights under the statute. Congress has exacted no penalty for the privilege it has granted and the Commissioner may not exact one.*" (Italics our own.)

One of the fundamental principles of taxation is that the incidence of a tax should be in accordance with the ability to pay. In income taxation, this means that the tax should be levied in proportion to income. That is all which the petitioner herein asks. If this cardinal principle is followed, justice will be done.

We do not believe that what the Commissioner terms the "unusual privilege" of filing a joint return was bought by the taxpayers herein, in the language of Fawsett v. Commissioner, "by the sacrifice of their other rights"—one of those rights being an equitable apportionment of their tax liability, according to their ability to pay.

The Commissioner insists that "the joint return as filed by husband and wife contains no date on which the individual incomes could be computed." The petitioner replies that if, as in the present case, the tax reported on the return is less than the correct tax, the Commissioner will not only discover that fact in the examination required by section 57, 26 U.S.C.A. § 57 and note), as he did here, but he will also necessarily ascertain the amount of the net income of each spouse, as he did here, and can easily determine the *proportion* of the deficiency for which each is liable.

In her opening brief and again in her reply brief, the petitioner suggested that if in any case the Commissioner is unable to determine which spouse is liable for a deficiency, his remedy is to assert the full deficiency against each of the spouses separately, and thus place the burden upon them

to prove the segregation. This suggestion, which the Commissioner ignores in his brief, would seem to meet any administrative difficulties that might be presented in the apportionment of the tax under a joint return.

In this connection, it should be borne in mind that the details of the transactions constituting the principal basis for the Commissioner's action in asserting the deficiency were, according to the stipulated statement of facts, "fully disclosed in a memorandum attached to said return by the taxpayers. * * *"

In Grant v. Rose (D.C.) 24 F.(2d) 115, 119, affirmed Rose v. Grant (C.C.A.5) 39 F.(2d) 340, appeal dismissed 283 U. S. 867, 868, 51 S.Ct. 341, 75 L.Ed. 1471, upon a joint return by husband and wife, a joint tax was assessed. Both defendants in the assessment were held to have properly joined in a suit for the recovery of overassessed taxes, the court observing that "the collector is not concerned with what they do with the recovery as between themselves."

Similarly, in the instant case, if the Commissioner, as the petitioner suggests, were to send each spouse a deficiency notice for the full deficiency, he would not be concerned with the apportionment of tax liability, but each taxpayer would have to prove how much each has paid and the amount for which each is liable. As the Board of Tax Appeals remarked in the case of Pacific Coast Biscuit Co. v. Commissioner, 32 B.T.A. 39, promulgated on February 14, 1935, "there is but one deficiency, and if it is attempted to collect more than that an appropriate remedy is doubtless available to petitioners."

Nor can the plea of administrative difficulty prevail against the fundamental requirement that a tax should be assessed according to the ability to pay. As was observed by the court in McIntosh v. Wilkinson (D.C.) 36 F.(2d) 807, 812, "Matters urged to defeat a liberal view of the statute, for example, that 'great additional labor would be required,' etc., are (in varying degree) potent against the whole theory of revision, or against any comprehensive 'system of corrective justice.'"

Be that as it may, the fact remains that in the instant case there is presented no such administrative difficulty, since it has been stipulated that a segregation of the amount of net income that the Commissioner has redetermined as a basis for his present claim for a deficiency will show a specified net income for the deceased husband, and a specified separate taxable income for the wife.

Finally, the Commissioner asserts that it is "the settled practice of the Bureau of Internal Revenue to enforce a joint and several liability in all cases of a joint return by husband and wife," and that "during the many years in which this practice of enforcing a joint and several liability against a husband and wife * * * has been followed, * * * Congress has repeatedly reenacted the law providing for such joint returns without substantial change." From this the Commissioner argues that the enactment of a statute without change after practical construction and operation under it embodies such settled practice as a satisfactory interpretation of the legislative intent.

The only evidence, however, that the Commissioner adduces as to this "settled administrative practice," is the publication, in 1923, of an office decision, I. T. 1575, II-1 Cumulative Bulletin 144. Of such an "I. T. office decision," the Supreme Court, in Helvering v. New York Trust Co., 292 U.S. 455, 467, 468, 54 S.Ct. 806, 810, 78 L. Ed. 1361, declared: "The Commissioner's suggestion that, by retaining the same definition in the 1924 act, 'Congress approved the construction for which he contends, is without merit. The definition had not been construed in any Treasury Decision, by the Board of Tax Appeals or by any court prior to that enactment. The dates of all constructions of the definition to which our attention has been called are shown in the margin. The regulation above referred to was approved February 15, 1922. In respect of the question here involved, it puts no construction upon the definition. The rulings, I. T. 1379, 1660, and 1889, cited by the Commissioner were made before the passage of the 1924 act, but they 'have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law.' See cautionary notice published in the bulletins containing these rulings. It does not appear that the attention of Congress had been called to any such construction. There is no ground on which to infer that by the 1924 act Congress intended to approve it."

Furthermore, the Commissioner's argument herein is diametrically inconsistent with his position in the case of Ambassador Petroleum Co. v. Commissioner, 81

F.(2d) 474, of this Court. In his brief before us in that case, the Commissioner said: "Petitioner argues further * * * that since Congress re-enacted the same provision in the Revenue Act of 1926, the administrative construction under the Revenue Acts of 1921 and 1924 must be deemed to have received legislative approval. However, there is nothing to show that the attention of Congress had been called to the Commissioner's interpretation of the provision. The Commissioner's interpretation was embodied in a General Counsel's Memorandum, which, together with I. T.'s and other informal rulings does not have the force or effect of Treasury Decisions and does not commit the Department to any interpretation of the law. See cautionary notice published in the Internal Revenue Bulletins; also Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361."

So here, there is nothing to show that the attention of Congress had been called to the alleged "settled administrative practice," to establish which the Commissioner cites only I. T. 1575, which "does not have the force or effect of Treasury Decisions and does not commit the Department to any interpretation of the law."

As sustaining his position, the respondent refers to the case of Reynolds v. Glenn, decided by the United States District Court for the Western District of Kentucky on April 30, 1935, reported in 353 C.C.H., Paragraph 9415. In that case, however, the husband's petition for review was dismissed by the Board of Tax Appeals "for failure to prosecute," and there was determined "a deficiency on the joint return." After a default had been taken before the board on the husband's petition, the petitioner sought to have set aside the action of the board, but the latter refused to allow him to file a tendered "bill of review." Both husband and wife then filed a bill in the District Court. The court dismissed the bill so far as it related to the husband, but found in favor of the wife under the statute of limitations, holding that notice of deficiency sent to the husband was not notice to the wife. There was no proof in that case that part of the true aggregate income was that of the wife, and the question of the proportionate tax liability of the spouses was not involved.

Both on reason and authority, we hold that, under a joint income tax return, the spouse whose income to no extent has given rise to a deficiency should not be held liable for such deficiency, either in whole or in part. In other words, the spouses are not jointly and severally liable for a deficiency arising entirely out of the separate income of one of them. In the instant case, tax liability should have been apportioned between husband and wife in accordance with income.

The decision of the board is reversed.

DENMAN, Circuit Judge (concurring).

I concur in reversing the decision of the Board of Tax Appeals. The pertinent sections of the Revenue Act of 1928 are as follows:

"§ 11. *Normal Tax on Individuals.*

"There shall be levied, collected, and paid for each taxable year *upon* the net income of *every individual* a normal tax equal to the sum of the following: * * *

"§ 12. *Surtax on Individuals.*

"(a) Rates of surtax. There shall be levied, collected, and paid for each taxable year upon the net income of *every individual* a surtax as follows: * * *

"§ 51. *Individual Returns.* * * *

"(b) Husband and wife. If a husband and wife living together have an aggregate net income for the taxable year of $3,500 or over, or an aggregate gross income for such year of $5,000, or over—

"(1) Each shall make such a return, or

"(2) The income of *each* shall be included in a *single joint return,* in which case the tax shall be *computed* on the aggregate income." (45 Stat. 795, 796, 807, 26 U.S.C.A. §§ 11, 12 notes and § 51 (b) (1, 2) and note.

Apart from the requirement to construe such taxing legislation in favor of the taxpayer, it seems to me clear that subparagraph (2) of Section 51 (b) must be interpreted with reference to sections 11 and 12 which alone provide for the normal and surtax taxation. These two sections say that such taxation shall be levied, collected and paid "upon the *net income* of *every individual.*" It is therefore my opinion that subparagraph (2) of 51 (b) should be interpreted to read as follows:

"(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income," *to determine the tax upon the net income of the Individual spouse.*

The Commissioner would have the section in effect read: "(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income," *to determine the tax upon the net aggregate income of two* individual incomes and then to be "levied, collected and paid" under rates imposed by sections 11 and 12 *only* on *individual incomes.*

The first seems the *necessary* interpretation of the terms of an act, which, in every paragraph upon which the assessment *necessarily* depends, makes the word "individual" or individual income the controlling factor. If this is not the logically necessary interpretation, there is at least an ambiguity as between the first and the second which must be resolved in favor of the taxpayer. McFeely v. Commissioner of Internal Revenue, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. ——, decided by the Supreme Court, November 11, 1935.

The procedure under such an interpretation would be simple. The aggregate income of the two individual taxpayers would be found in the manner prescribed by Treasury Regulation 74, Article 381.

"Art. 381. *Individual Returns.*— * * * "Where the income of each [husband and wife] is included in a single joint return, the tax is computed on the aggregate income and all deductions and credits to which either is entitled shall be taken from such aggregate income."

This computed total tax of the two individuals should then be apportioned between the two individuals in proportion to the net income of each individual. In this case it is stipulated that the net income of the husband is $9,614.47, and the net income of the wife is $253,479.41, and the total net income of the two, $263,093.88. The percentage of each in this total is the percentage of the tax computed on the joint return total, which should be assigned to each "individual."

The fact that there are no specific regulations of the Treasury Department providing how the apportionment should be made does not warrant an interpretation of the statute which, in sections 11 and 12, specifically provides that the tax should be levied, collected, and paid "upon the net income of *every* individual" into a tax imposing a joint and several liability on the aggregate income of *two* individuals.

The stipulated record shows that the deficiency was not assessed upon such an apportionment between the spouses. It also gives all the facts necessary for the required computation of the tax of each of the two spouses, which is the *ultimate fact to be determined by the Board of Tax Appeals.* Since that stipulation does not contain the return, "which is merely an evidentiary fact not necessary to compute the tax liability," it is not proper for appellee's brief to argue as if it were before us, as follows: "On the return that was filed by husband and wife in the present case it was and is impossible for the Commissioner to prorate the income. What the petitioner means is that she has now computed the individual incomes and has submitted them to this court, even though they were not ascertainable on the return as made. However, the ability of this Court to prorate the tax on the evidence before it cannot alter the fact that for the Commissioner to do so on the return was impossible."

There was submitted in evidence on the appeal, with the consent of both parties, a *blank* form 1040, similar to the one used in appellant's return. 1928 Regulations 74, articles 381, 383, and 385 required the use of this form. This form, although provided by the Department for a joint return, made no provision for all of the items necessary for the computation of the net income of each person. Article 385 requires that "Each taxpayer should carefully prepare his return so as fully and clearly to set forth *the data therein called for.*" The data appellee claims (but does not prove) was not returned with the form, was not "called for" by the regulation.

However, here there is no evidence to show that, in addition to satisfying the printed requirements, the actual return did not have all the data necessary and sufficient to compute the tax if the taxpayer's contention prevailed and that the commissioner's stipulated determination was not based upon such data.

It is inconsistent for the commissioner to insist that his stipulated segregations and redeterminations are to be divided up between those that are unfavorable and those that are favorable to the taxpayer, and the latter rejected if we determine the principles underlying the tax in a way favorable to the taxpayer. The plain intent of the stipulation is to the contrary.

Even if the items of the joint return were affirmatively shown not sufficient for the commissioner's computation, such in-

sufficiency, whether or not caused by the improper form of the return blanks furnished the taxpayer, *is no justification for an assessment shown by the stipulation not to be warranted by the taxing statute.*

There is no merit in the suggestion that in the few community property states such an interpretation would make assessment difficult in the determination of what is separate and what is community property. The same difficulty is encountered if separate returns are filed.

Appellee claims that it has long been a practice of the department to assess against each spouse a tax based on the total income of both. Here again the record is bare of any evidence to that effect and this court cannot take judicial notice of such a practice. The "office decision," I. T. 1575, as is stated by the Treasury Department itself, does "not commit the department to any interpretation of the law." Hence the office decision is neither a departmental interpretation nor evidence that it has been followed in such assessments. So far as concerns this appeal, we are required to construe section 51 (b) (2) of the act and article 381 of Regulations 74 as matters de novo.

In another case, on a record in which the Commissioner establishes the claimed long-continued practice of the Treasury Department and its recognition in repeated congressional enactments, this decision may well have no binding effect.

WILBUR, Circuit Judge (dissenting).

The petitioner is contending that after the tax is computed upon the aggregate income it must be apportioned to the husband and wife in accordance with their separate incomes. This, I think, is entirely inconsistent with the whole theory of a joint return and in direct conflict with the express terms of the statute which permits no such segregation. That question in a somewhat different form is submitted to the Circuit Court of Appeals for the Fifth Circuit in Anderson v. United States, 48 F.(2d) 201, 202, where it is said: "Appellant having elected to make a joint return, the Commissioner was under no obligation to change it and divide it into two separate returns. The mere fact that it was disclosed that appellant was living with his wife in a community property state was not sufficient data upon which to divide the return equally. For all the Commissioner knew, the income might have been largely

the separate income of the husband or wife or not community income at all. The contention is untenable."

This case is directly in point. It is true that the court states that there was no method by which the Commissioner could divide the income, but the decision is that the Commissioner was under no obligation to change it and divide it into two separate returns.

It may be added with reference to the question of whether or not there is sufficient data in the return to permit the segregation of the tax that upon the joint return the item which is now involved was claimed to be exempt from taxation. Consequently, there is no occasion to show in the tax return how the item should be divided. The first petition filed before the Board of Tax Appeals was entirely upon the ground that the claim was barred by the statute of limitations as to this item. The amended petition is based upon the proposition that whatever deficiency might exist with reference to the joint return filed in 1929 was wholly attributable to the income of the wife. The stipulation shows that in the return filed by the husband and wife it is shown that "Louis M. Cole and Frida Hellman Cole parted with certain shares of stock of Merchants National Trust & Savings Bank and after certain intermediate steps acquired the shares of stock of Transamerica Corporation. The details of said transactions were fully disclosed in a memorandum attached to said return by the taxpayers who claimed therein that they constituted a non-taxable reorganization." That is to say, the taxpayers made a joint return showing the exchange of stock belonging to them for other stock and claimed, in effect, that although this was a transaction in which the husband and wife were jointly interested, it was nontaxable. It was stipulated that "a segregation of the amount of net income which the Commissioner has redetermined * * * will show a total net income for petitioner's decedent of $9,614.-47 * * * and separate income of Frida Hellman Cole in the amount of $253,479.-41." It should be noted it is not stated that the data from which this segregation could be made is incorporated in the return, nor is it so claimed. This question is disposed of by the Board of Tax Appeals in its opinion. I think this position is sound and well stated.

It will be observed that in the statement the board says: "In the first place

the joint return contains no data upon which the separate taxable income of the two spouses can be computed. There is no segregation of the amounts of gross income severally received or any designation of the deductions to which each would be entitled."

While I think it is quite immaterial whether or not there is sufficient data in the return to form a basis for segregation of tax, it is clear that there was no such basis in this case, and the Board of Tax Appeals was right in sustaining the act of the Commissioner in assessing the tax as the law required upon the aggregate of the joint income, and that it is also right in refusing to segregate that tax, first, because the law neither requires nor permits it; second, because it was impossible to do so upon the facts returned by the party.