**Nell D. SURBER, Plaintiff,**

v.

**UNITED STATES of America, Commissioner of Internal Revenue, Tax Court of the United States, District Director of Internal Revenue Service, Defendants.**

United States District Court
S. D. Ohio, W. D.
Feb. 14, 1968.

J. Vincent Aug, Cincinnati, Ohio, for plaintiff.

Robert M. Draper, U. S. Atty., Columbus, Ohio, Thomas Smith, Asst. U. S. Atty., Cincinnati, Ohio, for defendants.

## MEMORANDUM OF OPINION

PORTER, District Judge.

There is pending for decision plaintiff's motion for a temporary injunction, the temporary restraining order having expired. The motion stands submitted on the verified complaint, the statements, arguments and briefs of counsel.

According to the verified complaint IRS has made an assessment against the taxpayer in the amount of $14,714.48 plus a fraud penalty of $7,357.24, which results because her former husband failed to include embezzled money as "income" in the joint return filed by the parties in 1961. She alleges her signature on such joint return was obtained by fraud in that her husband represented that his income was as shown in such joint return.

Taxpayer was unable to pay the deficiency and therefore had no alternative upon receipt of the "90-day letter" except to challenge the assessment and ask for its redetermination by filing a petition in the Tax Court of the United States. Of course she claims she had no knowledge that her former husband had embezzled money and this is not disputed; hence she is an innocent victim of his fraud just as the government is.

As to the balance of the complaint, suffice it to say that she alleges constitutional grounds exist for this Court to take jurisdiction of the case because she is being denied due process in that it just is not fair for her to have to go the route of the Tax Court to defend herself. She says she does not have the money to pay the tax and sue for a refund; that the Tax Court is not a judicial body established under Article III of the Constitution; that the Tax Court is a body of limited jurisdiction and the District Court, on the other hand, is possessed of broad, unwritten and common law powers.

■ First, it is well to note that the purpose of a preliminary injunction is ordinarily to preserve the status quo until the rights of the parties can be fully determined by a trial. Barron & Holtzoff—Federal Practice and Procedure, § 1433. The grant or denial of a preliminary injunction is not an adjudication of ultimate rights and does not foreclose further consideration at the trial on the merits of any question presented. Ibid., § 1433. Nevertheless, it should be granted only in cases clearly demanding it, and the burden is upon the applicant to show a clear right to this relief. Ibid.

■■ In exercising its discretion, to which such motions are addressed, the Court must balance the convenience of the parties and possible injuries to them which may result from granting or withholding injunctive relief. The likelihood of success at trial is said to be merely one strong factor to be weighed along with the comparative injuries to the parties. Ibid. Also, it is said that Courts are properly reluctant to determine doubtful questions of law and fact on a motion for preliminary injunction, but the presence of such questions will not require denial of the preliminary injunction if the harm to the plaintiff by such denial is sufficiently grave.

To the extent that the question is whether the assessment is fair, the answer is "no." That is not disputed. To the extent the question is whether or not the Court can do anything about it, or whether relief can only come through an amendment of the statute in question by Congress—it presents a more difficult question.

■■ A review of the respective positions of the parties is not necessary to a consideration of such question. We can begin by noting, as both sides agree, that before the taxpayer can come within the exception to the statute which forbids injunctions against tax assessments (§ 7421(a)) the Court must be able to find two things.

The first is that the facts of the case must present extraordinary and entirely exceptional circumstances. Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961); Miller v. Standard Nut Margarine Co., 284 U.S. 498, at 509, 52 S.Ct. 260, 76 L.Ed. 422 (1931); Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1921); Vuin v. Burton, 327 F.2d 967 (6 Cir., 1964).

Secondly, only if it is then apparent that, under the most liberal view of the law and facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise the District Court is without jurisdiction and the complaint must be dismissed. To require more than good faith on the part of the government would unduly interfere with a collateral objective of the Act—protection of the Collector from litigation pending a suit for refund. Enochs v. Williams Packing & Nav. Co., supra; Vuin v. Burton, supra.

How about the circumstances of this case? Are they "extraordinary and entirely exceptional"? The Court must conclude that they are not in the same sense that they are in most of the cases which govern whether or not there should be an exception to § 7421(a). For instance, in Hill v. Wallace the Court said, 259 U.S. at page 62, 42 S.Ct. at page 456:

"To pay the heavy tax on each of many daily transactions which occur in the ordinary business of a member

of the exchange and then sue to recover it back would necessitate a multiplicity of suits and, indeed, would be impracticable."

In the *Margarine* case, the Court was able to say, which this Court cannot see fit to do in this case, that there is no legal possibility that the tax would stand up because the article in question was not covered by the Act.

The two tests are, as pointed out in *Vuin*, in addition to those which control the determination as to whether or not the Court has equity jurisdiction, e. g., irreparable injury, an adequate remedy at law, etc.

In order to determine whether, under the most liberal view of the law and the facts, the United States cannot establish its claim, we look first to 26 U.S.C., § 6013(d) (3), which provides:

"* * * if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."

This was formerly § 51 and first appeared in the law in the 1938 Act. As to "why" the section was passed, we find in Furnish v. Commissioner of Internal Revenue, 262 F.2d 727, at 732 (9 Cir., 1958), the following:

"We agree with the Commissioner that after the decision in Cole v. Commissioner of Internal Revenue, 9 Cir., 1935, 81 F.2d 485, 104 A.L.R. 420, Congress in § 51(b) of the Revenue Act of 1938 * * * changed the language of the section to expressly provide that the liability of the joint signers shall be joint and several; and that such language was re-enacted into § 51(b) of the 1939 Code, controlling here. Under that law, as the House Committee Report states, 'deficiencies, penalties and interest may be collected from either or both of them.' (the joint signers.)"

Clearly, in the 1938 Act, to counteract the effect of *Cole*, the predecessor of 6013(d) (3) was passed because "it is necessary, *for administrative reasons,*

that any doubt as to the existence of such [joint and several] liability should be set at rest, if the privilege of filing such joint returns is continued." [Emphasis added.] H.Rep. No. 1860, 75th Cong., 3d Sess. pp. 29, 30; 1939–1 Cum. Bull., Part 2, 749, explaining the change in Section 51 of the Revenue Act of 1938, according to Note 14 in Kann v. Commissioner of Internal Revenue, 210 F.2d 247, p. 252 (3 Cir., 1953).

We have been unable to find out what the "administrative reasons" are.

Clearly the cases decided since the revision of § 51(b), as stated in *Furnish*, make "no distinction as to the liability of the signers based upon whether the transactions are fraudulent or nonfraudulent. The fact that the wife does not participate or even known [sic] of the husband's fraud does not exempt her from the civil penalties, including the penalty for fraud" (262 F.2d 732).

Besides *Furnish*, these cases include Moore v. United States, 360 F.2d 353 (4 Cir., 1965), cert. den., 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541; O'Dell v. United States, 326 F.2d 451 (10 Cir., 1964); Kann v. Commissioner of Internal Revenue, 210 F.2d 247 (3 Cir., 1953), cert. den., 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 and Howell v. Commissioner of Internal Revenue, 175 F.2d 240 (6 Cir., 1949). Compare Cirillo v. Commissioner of Internal Revenue, 314 F.2d 478 (3 Cir., 1963).

In *Furnish* there was a remand to the Tax Court for a redetermination of whether or not the wife signed under duress. Also in *Furnish* there was a significant quote from the Tax Court (262 F.2d page 732) as follows:

"'We reach this conclusion with great reluctance, because it is plain upon this record not only that the wife was not guilty of fraud but that she, along with the Government, was a victim of the very fraud that has tolled the running of the statute of limitations against her and furnished the basis of the imposition of the so-called fraud penalty. The result is highly in-

equitable, but it appears to be required by the plain language of Section 51 (b) and the cases applying it. To reach a contrary result with respect to her we would have to find that the returns were not in fact joint returns— a finding that cannot fairly be made on this record. The Congress has not committed to this Court the power of a court of equity.'"

This is believed significant because it seems to indicate that if the Tax Court can try the issue of duress, perhaps it can also try the issue of fraud in the inducement. (If there was forgery and the taxpayer had no notice of the assessment until it was too late to do anything about it, she would be entitled to injunctive relief. Helvey v. Wiseman, 199 F. Supp. 200 (D.C.W.D.Okl.1961).

On the other hand, it is to be noted that the Tax Court stated "the Congress has not committed to this Court the powers of a court of equity," giving weight to the contention of the taxpayer that her remedy at law in that court is not adequate.

As to the taxpayer's other claim of irreparable injury, it cannot be classed as strong, because the assessment is in the process of being redetermined, and as long as it is, taxpayer's wages will not be attached or property seized. However, it is no small matter that she has to defend herself, especially against a battery of government lawyers and the investigative forces behind them.

In view of the foregoing, this Court cannot find the United States cannot establish its claim. On the contrary, it is clear that it will probably establish the claim.

Taxpayer's counsel contends that it is inconceivable that any District Court or District Court jury would decide the case against her. We have to disagree in view of the foregoing statute, the legislative history, and cases. In a suit for refund, I see no alternative to a directed verdict against her in view of the present state of the law, unless she prevails in her contention that the joint return is void because of fraud in the inducement or unless fraud in the inducement is a form of "duress" or because the law is unconstitutional, which, surprisingly, does not seem to have been litigated. Otherwise, there is simply no relief for her unless the statute is amended by Congress.

Not knowing the "administrative problem" which prompted the statute, perhaps the Court should not comment. Certainly, such comments are not necessary to this decision and the taxpayer has undoubtedly had enough in the way of comments that she has been proceeded against unfairly.

With that concession at every level of the Internal Revenue Service, she would have good reason to wonder why the forces of such a large agency are marshalled against her, one lone individual, for no apparent reason. At a time when the government is being urged to review collection practices of lenders as part of protection of consumers, she can be forgiven if she wonders why the government doesn't take a long look at some of its own collection practices and provide statutory exceptions for cases such as hers which cry out for relief.

I am sure the taxpayer, being a lawyer, will understand, however, that this Court cannot disregard the statute; cannot disregard the legislative history and the cases; and has no alternative except to deny her motion for a temporary injunction.

Things may not be as dark as they seem. The Tax Court is backstopped by the Court of Appeals. In the Tax Court she will have a hearing and there will be no need for discovery to prepare for it, because all the facts are on her side. She is simply innocent and a victim of her husband's fraud just as much as the government. She will have a hearing before the Tax Court and can urge duress and possibly fraud in the inducement. She is not estopped, as her husband would be, by her husband's conviction from litigating the issue of her husband's fraud. Moore v. United States, 360 F.2d 353 (4 Cir., 1965). Un-

der the circumstances the Court thinks it would be an exercise in futility to have a further hearing to determine whether a permanent injunction should be granted and the Court has no choice except to grant the government's motion to dismiss.

Entry accordingly.