Adolph G. Rosengarten, Transferee v. Commissioner.
Rosengarten v. Commissioner
Docket No. 109041.
United States Tax Court
1943 Tax Ct. Memo LEXIS 372; 1 T.C.M. (CCH) 872; T.C.M. (RIA) 43161; April 6, 1943
*372 Payments made an insurance company by an employer for annuities for retired employees in continuation of pensions theretofore paid by the employer to such employees held to be deductible as business expenses of the employer. Where an employer paid a third person an amount of money for which such third person agreed to pay a certain proportion of premiums on group policies of life insurance for former employees which proportion had formerly been paid by the employer, held the amount so paid the third person is deductible as a business expense of the employer. Frederick E. S. Morrison, Esq., 1429 Walnut St., Philadelphia, Pa., for the petitioner. Paul E. Waring, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax for the year 1940 against petitioner as transferee of the assets of the Falls Company in the sum of $9,401.93. Petitioner has conceded his transferee liability in the event we decide that the Falls Company was liable for the deficiency. The first issue is whether or not the Falls Company properly deducted as a business expense an amount of $227,424.19 paid a life insurance company for the purchase of annuities *373 to continue pensions to retired employees. The second issue concerns the deductibility as a business expense of an amount of $4,800 paid by petitioner to continue payment in the future of premiums on group life insurance policies owned by certain retired employees and in which they were beneficiaries. At the hearing respondent conceded an issue concerning the deductibility of liquidation expenses incurred by the Falls Company in 1940. The proceeding has been submitted upon the pleadings, a stipulation of facts, and oral and documentary evidence. The stipulated facts not set forth are included herein by reference. Findings of Fact Petitioner is a citizen of the United States residing at St. Davids, Pennsylvania. His return for 1940 was filed with the collector of internal revenue for the first district of Pennsylvania. Powers-Weightman-Rosengarten Company (hereinafter referred to as Powers Company) was incorporated under the laws of Pennsylvania in 1901 and was engaged from that time continuously until June 30, 1927 in the business of manufacturing chemicals. It had three plants in Philadelphia, branch sales offices in New York and St. Louis, and from one thousand to twelve hundred *374 employees. Pursuant to a consolidation agreement between Merck & Co., a New York corporation, and Powers Company, dated June 20, 1927 (hereinafter referred to as the agreement), Powers Company, on that date, transferred all of its operating assets and chemical manufacturing business to Merck & Co., Inc., a new corporation incorporated under the laws of New Jersey, except that it retained its real estate which had been used in its business. Pursuant to the same agreement, Merck & Co. transferred all of its operating assets and chemical manufacturing business to Merck & Co., Inc. Thereupon the name of Powers Company was changed to Falls Company. From July 1, 1927 until December 1940, Falls Company, in accordance with the terms of the above-mentioned agreement, leased to Merck & Co., Inc., its real estate retained under the agreement. During that period Falls Company invested and reinvested its funds, maintained its real estate and the improvements thereon, collected income and rents from such real estate, and distributed the net proceeds and other income from time to time as dividends to its stockholders. The real estate retained by Falls Company included three manufacturing plants *375 in Philadelphia, consisting of a seven story office building and one hundred and twenty-three other buildings with their appurtenances, boilers, elevators, and railroad sidings. It also included about thirty-seven dwellings not used for manufacturing purposes at Falls of Schuylkill and land and an office building in each New York City and St. Louis, Missouri. During the period 1930 to 1940 Falls Company sold its New York properties, certain of its Philadelphia properties, and its St. Louis properties to nominees of Merck & Co., Inc. In December 1940, immediately prior to the distribution in complete liquidation of the Falls Company, hereinafter mentioned, such company still retained Falls of Schuylkill property and substantial portions of one of the Philadelphia plants. Apparently due to the above-mentioned sales, the real estate holdings of Falls Company gradually decreased from a book value of $1,607,926.44 in 1928 to a book value of $311,948.33 in 1940. The rents received by Falls Company from its real estate in the calendar years 1928 through 1940 ranged from $168,015.31 in 1928 to $54,330.03 in 1940, totalled approximately $1,438,072 for that period, and averaged approximately *376 $110,620 per year. Beginning in 1912 or before Powers Company paid pensions to its retired employees who had been in its employ for many years, some having been in its employ for 30 or 40 years. The total amount of pensions paid in each of the calendar years 1924 through 1926, and the first six months of 1927, were as follows: 1924, $6,116.50; 1925, $5,713; 1926, $5,848.50; and January 1 to June 30, 1927, $3,512.50. On June 20, 1927, the stockholders of Powers Company executed a document, referring to the consolidation agreement with Merck & Co. and stating that: WHEREAS, one of the economies to be effected by such consolidation will be the economies in the personnel of the two companies by the elimination of duplications of effort; and WHEREAS, the effecting of such economies will necessitate the elimination of a number of the old and faithful employees of Powers-Weightman-Rosengarten Company; and WHEREAS, in view of the long and faithful services of such employees, it is deemed but proper that pensions be granted to them to such amount not in excess of fifty per cent (50%) of their present salaries for such period as the officers deem proper, which pensions shall be a charge *377 against the present company; NOW, THEREFORE, as a condition of the consummation of the above transaction, the undersigned, as stockholders of Powers-Weightman-Rosengarten Company and/or as beneficiaries of sundry trusts and estates in which the stock of said Company is held and/or as Trustees or Executors of said trusts and estates, do hereby approve of the granting of pensions by Powers-Weightman-Rosengarten Company to such of its employees as the officers may from time to time designate, in amounts not exceeding fifty per cent (50%) of their present salaries. This document, while constituting a permanent and irrevocable approval by the signers thereof to the foregoing policy and action, is not to be construed as giving any right to any employee to the pensions above authorized, the granting and the continuance of which shall be solely in the discretion of the officers of Powers-Weightman-Rosengarten Company. After June 30, 1927 some of the employees of Powers Company became temporary employees of Merck & Co., Inc. for the purpose of facilitating the consolidation of Powers Company and Merck & Co. On December 12, 1928, the board of directors of Falls Company, formerly Powers Company, *378 passed a resolution that those employees then with Merck & Co., Inc., who had on June 30, 1927 been in the employ of Powers Company for a period of twenty years and who might be dismissed by Merck & Co., Inc. might be considered as applicants eligible for pensions. The resolution provided further that such pensions would last for life in the case of employees so dismissed at the age of 60 years or over; for not to exceed 10 years for those dismissed at ages between 55 and 59 years, inclusive; for not to exceed five years for those dismissed at the ages of 50 to 54, inclusive, and for not to exceed three years in the case of employees dismissed at ages under 50 years. There was a further provision that pensions granted would be subject to modification or cancellation by the directors of Falls Company. Merck & Co., Inc. did not assume, in 1927 or at any other time, any obligation to pay any pension to any retired employee of the Powers Company. On July 1, 1927, there were 21 former employees of Powers Company to whom pensions had been granted and who were still receiving those pensions. One of these employees had been placed on the pension list in 1913, another in 1917, another in *379 1919, and the others after 1920. The amounts paid to those employees during 1927 varied from $66 to $2,430 and averaged approximately $535. From July 1, 1927 through 1937 Falls Company added 81 former employees to its pension list. Thereafter, no other persons were added to the list. All of the 81 persons added to the list worked for some period for Merck & Co., Inc. None of the persons receiving a pension from Falls Company after July 1, 1927 worked at any time for that company after that date, but all had been in the employ of its predecessor for a period of at least 20 years prior to June 30, 1927. The 81 added to the pension list from July 1, 1927 through 1937 included 38 employees still receiving pensions in 1940; one of the 38 died on October 25, 1940. Three persons who received pensions prior to July 1927 were still receiving pensions in 1940 from Falls Company. At the time of the complete liquidation of Falls Company in December 1940, as hereinafter mentioned, there were 40 former employees receiving pensions from Falls Company. The persons on the pension list were chosen by the directors of Falls Company. During the period from June 30, 1927 until its complete liquidation *380 in 1940 Falls Company paid pensions totalling $523,141.26 and averaging for 1928 through 1940 approximately $39,213.12 a year. These payments were voluntarily made by Falls Company. They were deducted by it on its income tax returns for the respective years of payment and were allowed as deductions by respondent. During December 1940 Falls Company distributed all of its assets to its stockholders in complete liquidation and thereupon dissolved. The petitioner was one of its stockholders and received his pro rata share of this distribution. On November 12, 1940, the board of directors of Falls Company adopted a resolution, referring to the document executed by the stockholders on June 20, 1927, authorizing the officers of Falls Company to spend as much as was necessary but not more than $300,000 to purchase single premium annuities for its retired employees to whom pensions had theretofore been paid in an amount equal to their respective pensions and to pay group life insurance premiums as the company had been paying for such of those retired employees as had purchased group life insurance. Pursuant to this resolution, Falls Company during 1940 paid to the Penn Mutual Life Insurance *381 Company of Philadelphia, Pennsylvania, the sum of $227,424.19 for the purchase of annuities for each of the persons then receiving a pension from Falls Company. The annuity contracts provided for the payment to each such person by the Penn Mutual Life Insurance Company of an annuity in an amount equal to that immediately theretofore received by him from Falls Company as a pension and in as frequent installments as those which his or her pension from Falls Company had immediately theretofore been paid. The amounts paid for each of these annuity contracts were the standard prices charged at that time, by the Penn Mutual Life Insurance Company for contracts similar in all respects to those so purchased by Falls Company. Each contract so purchased provided that the entire benefits thereunder should be paid to the employee for whom it was bought and no part of the benefits under any of these contracts could be received or paid for the benefit of Falls Company or any of its stockholders, including the petitioner. After the purchase of these annuity contracts the Penn Mutual Life Insurance Company sent a letter to each person theretofore receiving a pension stating that the annuity contract *382 which was enclosed with the letter was the property of the recipient and that the insurance company was liable for the performance thereof. In December 1940 the ages of the persons receiving annuities ranged from 64 to 96 years, the average age being approximately 75 years. The monthly payments under the annuity contracts ranged from $7 to $185 per person, the average being $54.86. The premiums paid for the annuities averaged approximately $5,685.60 per person. The pensions paid to each person by Falls Company and Powers Company, its predecessor, and the annuities subsequently agreed to be paid by the Penn Mutual Life Insurance Company were reasonable in amount. None of the persons receiving pensions was at any time after July 1, 1927 a stockholder of the Falls Company. The pensions paid by Falls Company and Powers Company and the provision to continue the pensions through the medium of the purchased annuities after its dissolution were in recognition of the many years of service of the recipients to the company and were additional compensation for such services. At various times various employees of the Falls Company purchased group life insurance policies on their respective *383 lives. The premiums on these policies were paid in part by Falls Company and in part by the persons whose lives were so insured. With respect to those persons who had purchased such policies and who subsequently received pensions from Falls Company the insured's share of the premium, beginning at the latest in 1931, was subtracted from the pension payable to him or her, and this share of the premiums together with the share of Falls Company was paid to the insurer by Falls Company. In December 1940 there were 18 of the persons receiving pensions who also owned group life insurance policies. The face amount of these policies totalled $34,500 and ranged from $1,000 to $5,500. The total premiums per month on these policies aggregated $37.55, of which Falls Company's shares totalled $22.25. The share of the insurance premiums paid by Falls Company was reasonable in amount. All persons for whom such premiums were paid had been employed by Powers Company for at least 20 years prior to June 30, 1927 and none was at any time a stockholder of Falls Company. None of the benefits under the insurance policies could be received by or paid for the benefit of Falls Company or any of its stockholders, *384 including petitioner. The amounts paid by Falls Company as its share of these insurance premiums during the period from June 30, 1927 to December 31, 1940 were deducted by Falls Company on its income tax returns for the respective years of payment and were allowed by respondent as deductions in computing taxable net income for those years. In December 1940, in view of the pending liquidation and dissolution of Falls Company and in order to preserve for the persons then owning such policies the rights toward which these insured persons had been contributing for many years, the Falls Company paid to Merck & Co., Inc. cash in the sum of $4,800, being the then estimated value of the future premiums payable by Falls Company and by the insured persons on these policies, in consideration of the undertaking by Merck & Co., Inc. to continue to pay these premiums in future years beginning with the monthly premiums due January 1, 1941. Merck & Co., Inc. thereupon gave written notice to each of the insured persons that it would pay these subsequent premiums. Merck & Co., Inc. had not at any prior time assumed any liability of Falls Company for the latter's share of such premiums. In computing *385 its net taxable income on its income and excess-profits tax return for the calendar year 1940, Falls Company claimed a deduction for the $227,424.19 paid to the Penn Mutual Life Insurance Company for annuities and for the $4,800 paid to Merck & Co., Inc. for the group life insurance. Respondent in his notice of deficiency disallowed these deductions. The $227,424.19 paid to the Penn Mutual Life Insurance Company for annuities was an ordinary and necessary business expense of Falls Company. Opinion TYSON, Judge: The first issue is whether or not Falls Company properly deducted as a business expense in 1940 the amount of $227,424.19 paid for annuities to continue pensions to retired employees. Petitioner contends that this amount constituted an ordinary and necessary business expense under section 23(a) (1) of the Internal Revenue Code. [1]
*386 Respondent apparently contends that the amount of $227,424.19 paid by Falls Company for the annuity contracts in continuance of pensions theretofore paid to retired employees and the amount of $4,800 paid by it for the assumption by Merck & Co., Inc. of the payment of premiums on the group life insurance contracts, both amounts being paid in December 1940, did not constitute business expenses, but constituted instead, gifts to the recipients, because Falls Company was not during the time it was engaged in the business of manufacturing chemicals under any legal obligation to make such payments; and was under no legal obligation thereafter to continue either the pensions or group insurance for its former employees since none of the recipients had worked for Falls Company during the period June 30, 1927 to December 31, 1940, inclusive. Respondent also apparently contends that those amounts were not ordinary business expenses of Falls Company because that company was not engaged in the business of manufacturing chemicals from June 30, 1927 through December 31, 1940, inclusive, but during such period was merely a holding company. That pensions paid retired employees are deductible as *387 ordinary and necessary business expenses is well established. Lucas v. Ox Fibre Brush Co., 281 U.S. 115; Flood, et al. v. United States, 133 Fed. (2d) 173; and Regulation 101, Article 23 (a)-9. [2]
Respondent's first contention, that the payment of $227,424.19 in 1940 was a gift because Falls Company made the payment voluntarily and without any legal obligation therefor, clearly has no merit. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730; Levey v. Helvering, 68 Fed. (2d) 401; Fisher v. Commissioner, 59 Fed. (2d) 192 and cases cited therein; Wilkie v. Commissioner, 127 Fed. (2d) 953; and Flood, et al. v. United States, supra. The fact that none of the recipients of the benefits had worked for Falls Company since 1927 does not, we think, affect the character of the payment inasmuch as *388 the amount so paid was clearly additional compensation for past services rendered for a period of at least twenty years, by the recipients; and that being true it is of no import, under the facts of record, as to the time when these past services were rendered. See Flood, et al. v. United States, supra.
With respect to respondent's second contention so far as concerns the payment of $227,424.19, it is to be noted that while from June 30, 1927 to December 31, 1940, Falls Company was not engaged in the business of manufacturing chemicals, it was nevertheless actually engaged from June 30, 1927 until its complete liquidation in December 1940, (during which period this payment of $227,424.19 was made) in the business of maintaining and renting real estate owned by it and in investing and reinvesting its funds and distributing the net proceeds and income from its operations as dividends to its stockholders. That the Falls Company was thus, during this period, conducting a different type of business from that of manufacturing chemicals in which it had theretofore been engaged does not affect the deductibility of the payment of the $227,424.19 for annuities *389 in continuance of or in substitution for the pensions theretofore paid, as ordinary and necessary business expenses. Cf. Flood, et al. v. United States, supra, where pensions were paid former employees by an employer who had altogether discontinued business, and the amount of the pensions was allowed as a deduction as a business expense. See also Kornhauser v. United States, 276 U.S.; Burnet v. Marston, 57 Fed. (2d) 611; and Waters F. Burrows, 38 B.T.A. 236. Respondent makes no argument that the amount paid for the annuities was not an ordinary expense because of the size thereof and he would not be warranted in doing so, since the annuities purchased therewith were in the identical amounts and payable at like periods as were the pensions which latter it is stipulated were in reasonable amounts. If the pensions were reasonable in amounts so were the annuities. Neither do we think the payment was not an "ordinary" expense within the meaning of section 23 (a), supra, because it was not habitual or recurrent in the sense that Falls Company would not and had not made similar payments. *390 The test to be applied in determining whether an expense is "ordinary" is a somewhat elusive one. Mr. Justice Cardozo said in Welch v. Helvering, 290 U.S. 111: * * * Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. While the payment of $227,424.19 was in a larger amount than Falls Company had in any year theretofore paid in pensions it is obvious that this was due entirely to its impending dissolution. The company was discontinuing its existence and, desiring to continue affording to its aged and retired employees the same protection by way of additional *391 compensation which it had theretofore done through the medium of pensions, it adopted the method of purchasing the annuities which we think was a reasonable method and one of the best methods, if not the best, it could have adopted to effectuate its purpose. The dissolution and liquidation of Falls Company, occasioning this expenditure of $227,424.19 occurred, and could have occurred, only once in its lifetime, and we have found as a fact, and so hold, that the expenditure was an ordinary and necessary expense of Falls Company and as such deductible by it. "Dissolution and liquidation will of course occur but once in the case of any particular corporation, but it is an everyday happening in the business world, and in this sense it is quite an ordinary affair under the test of the Welch case." Pacific Coast Biscuit Co., 32 B.T.A. 39. The second question is whether the $4,800 paid by Falls Company to continue payment of premiums on group life insurance policies owned by certain employees is a deductible business expense under section 23, supra. For the same reasons as applied in our treatment of the first issue we hold that respondent erred *392 in disallowing deduction of the $4,000 paid by Falls Company to continue payment of premiums on the group life insurance policies owned by certain of its retired employees since such payment was of a similar nature to the payment involved in the first issue. Decision will be entered under Rule 50.
Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
2. ART. 23 (a)-9. Pensions * * * - Amounts paid by a taxpayer for pensions to retired employees * * * are proper deductions as ordinary and necessary expenses. * * *↩