**Rubye G. HELVEY, Plaintiff,**

v.

**Earl WISEMAN, District Director of Internal Revenue, Defendant.**

**Civ. No. 8927.**

United States District Court
W. D. Oklahoma.

Sept. 21, 1961.

Supplemental Opinion Sept. 26, 1961.

owned and operated a drug store and pharmacy in the City of Lawton, Oklahoma; that prior to 1944, certain differences had arisen between them and the plaintiff in this case had filed a suit for divorce and the plaintiff's husband, John Helvey, had—at least on one occasion—instituted divorce proceedings against the plaintiff. The court further finds from the testimony that at no time during the marriage had they filed a joint tax return; that the plaintiff owned no property of any kind or character and that the drug store property was the property of her husband, John Helvey.

The court further finds that in 1944 and 1947, the taxable years in question, that John Helvey forged his wife's name to a joint income tax return. This is not denied by the defendant. The court further finds that sometime after 1947, the 1944 and 1947 tax returns were under investigation by the Internal Revenue Service and that the undisputed evidence is that no agent of the Federal Government at the time they were investigating the returns ever called upon or talked with the plaintiff, Rubye Helvey, about the returns and that she had no information of any kind or character that her name appeared on either of the returns involved herein.

The court further finds and it is not disputed that at the time the 1944 return was filed by her husband, on which he forged her name, that she was under a restraining order from the State District Court prohibiting her from going about the drug store business or in anywise interfering with the operation of the business, and that at the time the 1947 return was filed with her name on the same, forged by her former husband, that she had been granted an absolute divorce from him.

The court further finds that the traditional 90-day letter sent out by the defendant was directed to John Helvey and Rubye Helvey, the plaintiff in this case, on May 1, 1953, more than five years after the divorce, and was sent to the drug store address of the plaintiff's husband and that the plaintiff never at any

Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for plaintiff.

Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., and Robert J. Cooney, Tax Div., Dept. of Justice, Washington, D. C., for the Government.

RIZLEY, District Judge.

This action was brought by the plaintiff to obtain an injunction restraining the defendant from enforcing certain tax liens which it attempts to assert upon certain properties of the plaintiff, and from proceeding in any manner to collect certain assessments made by the defendant for unpaid income taxes levied and assessed against the plaintiff for the years 1944 and 1947. Summary judgment was sought by the defendant which the court overruled and the case was heard and tried before this court on the second day of August, 1961.

The court finds from the evidence introduced in the trial of said cause that the plaintiff and John Helvey were married and lived together as husband and wife for a number of years; that John Helvey, the husband of the plaintiff,

time received a copy of the notice, or any other notice, that the Government was making this assessment, and that she never at any time authorized her husband to sign her name to any tax return.

The Government contends that even admitting that the plaintiff's name was forged on the tax returns, that she is precluded from maintaining this action because she did sign a power of attorney giving her husband's lawyer the power and authority to represent her in the Tax Court case involving the taxes herein and the evidence shows that the taxpayer, the plaintiff herein, did sign such power of attorney.

The undisputed evidence in the case in respect to the plaintiff signing the power of attorney is that the lawyer for her husband did come to her with a paper and advise her that her ex-husband was involved in a controversy with the Internal Revenue Department; that he told her that she was in no way involved but because of the fact that the 1944 tax year was involved and that she was not at that time divorced from her husband, even though they were living separate and apart, that it was necessary for him to have her signature on the petition and also a power of attorney. The plaintiff's evidence is that her husband's lawyer told her that she was in no way involved, nor would not be involved in any way, and that relying upon the statement of her husband's lawyer, she signed, without reading, the tax petition and the power of attorney.

The undisputed evidence is that she did not know at that time that her name appeared on the tax returns signed by her husband and that she relied upon the statement of her husband's lawyer that she was not involved in any manner. The undisputed evidence is that she did not appear in the Tax Court, nor participate in any manner in the tax suit, and the evidence is undisputed that the first time that she had any actual knowledge that the Internal Revenue was claiming in any way that she was liable for income taxes for the years 1944 and 1947 was when her brother, Senator Harris, obtained some abstracts on lands she had inherited from her parents and the tax liens in question appeared thereon; that immediately Senator Harris commenced an investigation and it was then that it was learned that the plaintiff's former husband had forged her name to returns in 1944 and in 1947, and that the Tax Court had sustained the Government's contention that additional taxes for the years 1944 and 1947 were to be assessed against the plaintiff's former husband and against plaintiff by reason of her being the ex-wife of John Helvey.

Mrs. Helvey began within a very short time to seek relief from the Internal Revenue Service and to get her inherited property released from the liens that the Internal Revenue Service had filed and she was then advised by the Internal Revenue Service that it was impossible for it to grant her relief irrespective of the equities, and in truth and in fact there was no way she could obtain relief. Upon receipt of this advice, she then had her lawyers file this case.

Notwithstanding all of the admitted and undisputed facts in this case, the defendant contends that this court has no jurisdiction and that under the facts in this case, the court is bound by the provisions of Sections 6212(a) and 6213(a) as re-enacted in 6512 and 6512 (a). The statutes cited by the Government agency, the defendant in this case, say in effect, and I quote:

"If the Secretary or his delegate has mailed to the taxpayer a notice of deficiency under section 6212(a) (relating to deficiencies of income, estate, and gift taxes) and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year * * *, in respect of which the Secretary or his delegate has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part

of the tax shall be instituted in any court except—

(1) As to overpayments determined by decision of the Tax Court which has become final; and

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final; and

(3) As to any amount collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive."

Of course, if this statute was applicable to what we find the facts to be in this case, the Government's contention would be sound. We point out, however, that:

(1) The tax return was a forgery so far as this plaintiff is concerned;

(2) The plaintiff at no time acquiesced in the forged returns made by her former husband.

(3) No notice was given her of the assessment of the deficiency; the evidence being, and we so find, that the only notice that was sent out was mailed to John and Rubye Helvey—long after they were divorced—at John Helvey's drug store address, and the plaintiff had no notice of any kind or character of the proposed assessment.

The Government agency, the defendant in this case, says, admitting all of the above, that when the plaintiff signed the power of attorney and the petition in the Tax Court and made an affidavit that she is bound by the petition and her signature thereon and that in a court of equity she has no right to explain the circumstances surrounding and what was said and done at the time the petition was presented to her by her former husband's lawyer. And while not denying that her ex-husband's lawyer told her that she was

in no way involved, and would in no way be involved, and that the reason he was asking her to sign the petition was because at the time of the first return in 1944 that she had not at that time been finally divorced from her husband—although a divorce case was pending—and they were living separate and apart, and that even though she did not participate at the trial in the Tax Court nor have any notice of its decision and did not know that her name had been forged to the tax returns that the forgery and all other matters were cured when she put her name on the tax petition under the circumstances as recited herein and is barred both in law and in equity from further proceeding to relieve herself and her property from the payment of these taxes.

This court is fully aware that under the law a person who signs his name to a document verifying that he or she is aware of the contents raises the presumption that the person so signing has knowledge of what the document contains, and this court recognizes that there is great value in the stability of the record so to speak and that no one should commit himself or herself, as in this case, to something in writing unless he is fully cognizant of the effect it may have upon him. And we do not shy away from the fact that to hold that the signing of the tax petition and power of attorney in this case is not binding upon the plaintiff corrodes, so to speak, in some small degree the reliability of our procedural system. However, we are of the firm belief that the facts and circumstances which surround, and which are largely undisputed in this case, dictate that to hold this plaintiff liable solely because she signed the tax petition and the power of attorney would be inequitable and unconscionable.

We have here a case in which the name of the plaintiff on the tax returns in the first instance were forged and we so find. We have here a case in which at the time the 1944 return was filed by the plaintiff's husband, the plaintiff was under an injunction not to go near her husband

nor his place of business and we so find. We have here a case in which at the time the 1947 tax return was signed and filed by plaintiff's husband, with her forged name thereon, they had been legally divorced and we so find. We have here a case in which the Government was obliged under the law to give notice to the taxpayer—what it terms the traditional 90-day notice—and we so find, and that said notice is mandatory and jurisdictional and that no such notice was given to the plaintiff; the only notice was mailed to John and Rubye Helvey jointly at his place of business after they had been divorced.

We have here a case in which the lawyer of plaintiff's former husband took a petition and power of attorney to her and requested her to sign, advising her that while she was not, and would not be involved, in any way that because she had not been divorced at the time of the first return, it was necessary to have her sign the petition and power of attorney. We have here a case in which the undisputed facts show that she did not read the petition nor the power of attorney, that she relied wholly upon the statement of her ex-husband's lawyer. We have here a case in which the court finds that the plaintiff had no knowledge whatsoever of the claimed taxes until after they had been assessed and the Tax Court case had been determined. We have here a case, and the court so finds, which so far as this plaintiff is concerned was an ex parte proceeding in which she did not appear either in person or by counsel and that the first notice she had of any kind that she was in any way involved was when abstracts were obtained on her inherited land showing that the Government had filed tax liens growing out of these proceedings.

Finally, the defendant contends that Section 7421 of the Internal Revenue Code, 26 U.S.C.A. § 7421, prohibits suits to restrain assessments or collections and prohibits the court from exercising its jurisdiction and granting injunctive relief. It is, of course, clear that the statute was enacted for the purpose of prohibiting injunctive relief in cases that had been legally litigated in the tax courts and where the tax had become final. The courts, however, have developed a line of cases which tempers the harshness of this statute. They have said in numerous cases that injunctive relief can and will be granted if there are "unusual and extraordinary circumstances" which would make it unjust to enforce this statute. This line of reason was followed in an early Oklahoma court decision in the case of Driscoll v. Jones, 19 F.Supp. 792 (N.D.Okl.1937). The court held in considering the injunctive section of the statute that they had never gone so far as to say that the rule was absolute and they would not restrain the collection of taxes in a proper case and that they had repeatedly indicated that extraordinary and exceptional circumstances would render the provisions of the injunctive statute inapplicable. To the same effect is the holding of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 and Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822.

There is no set pattern or guide that will enable any court to say just what facts will merit allowing injunctive relief. We think the test comes within the language used in Smith v. Flinn, 8 Cir., 261 F.2d 781. There the court said—

"What constitutes unusual and extraordinary circumstances so as to render inapplicable federal statutes prohibiting suits to restrain assessment or collection of taxes is determined by no precise formula, but is varied, and each case must be decided upon its own peculiar underlying facts."

We believe that in this case, and so find, that there are extraordinary and exceptional facts which make the statute inapplicable. These exceptional facts are that the plaintiff in this case did not owe any taxes for the taxable years 1944 and 1947. She did not make any return of taxes for those years. The returns upon which the Government relies were forged returns so far as she is concerned. She

signed the power of attorney and the tax petition, under the circumstances hereinbefore related, believing in good faith that she would not be affected. She had notice of the hearing; she had no notice of the assessment; she was not represented by counsel and did not appear in person or by deposition.

It is conceded by the parties that the plaintiff has exercised all of her administrative remedies and has been refused relief by the Internal Revenue Service. It is also admitted and conceded by the defendant that if the plaintiff were to pay these taxes that there is no remedy whereby she could sue to recover the taxes so paid.

The State and Federal District Courts, as well as the Supreme Court of the United States, have in numerous cases held that forgery can confer no power or transfer no rights or authority on anybody. Neither can the Internal Revenue Service create and assess income taxes against someone who does not have any income. Neither can the Tax Court assert any liability or create taxes against someone where they do not give notice to that particular person of a hearing and give that person his day in court. Any judgment without notice and without hearing would be void.

The court therefore finds that under the facts in this case that the plaintiff has proved by a preponderance of the evidence that she is entitled to the relief prayed for and concludes as a matter of law applicable to the facts and findings herein that the plaintiff is entitled to judgment against the defendant, permanently enjoining the defendant from asserting the tax liens filed upon the plaintiff's several properties as set out in the pleadings and disclosed by the evidence and is permanently enjoined from collecting or attempting to collect the purported taxes which it has assessed against her.

Additional and Supplemental Findings of Fact, Conclusions of Law, and Judgment

It has come to the Court's attention since filing the Findings of Fact, Conclu-

sions of Law, and Judgment that the record in this case reveals that the abstracts which disclosed the tax liens were obtained by the plaintiff's brother, Ray Zachery, instead of Senator Harris, but that Senator Harris made the investigation after the abstracts disclosed the tax liens in question.

The record also shows so far as the power of attorney is concerned that the plaintiff denied signing the same and her testimony was corroborated by other testimony expressing an opinion that it was not plaintiff's genuine signature on the power of attorney and that while her name appeared thereon she did not sign it.

It should be noted that the defendant offered no evidence to dispute plaintiff's testimony, or the corroborating testimony in respect to the plaintiff's signature on the power of attorney.

It Is Therefore Ordered that the original Findings of Fact, Conclusions of Law, and Judgment in this case will be modified by striking out the words "power of attorney" wherever they appear.